# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| CHRISTOPHER SANDKNOP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 17-03265-CV-S-RK-P |
| | ) |
| MO. DEPT. OF CORRS., et al, | ) |
| | ) |
| Defendants. | ) |

## ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS AND DISMISSING THE CASE FOR LACK OF SUBJECT-MATTER JURISDICTION

In this *pro se* § 1983 action for money damages brought by a state inmate against prison officials, before the Court are the remaining Defendants' Motion to Dismiss (doc. 16) and Plaintiff's Motion for Appointment of Counsel (doc. 24). For the reasons stated below, the Motion to Dismiss will be **GRANTED IN PART**, the Motion for Appointment of Counsel will be **DENIED** as moot, and the case will be **DISMISSED** for lack of subject-matter jurisdiction.

## Background[1]

Plaintiff alleges that Defendants wrongly incarcerated him for approximately eight months longer than he should have been held. On July 12, 2013, Plaintiff pleaded guilty to one count of driving while intoxicated as a "chronic offender." On the same day, the state circuit court judge sentenced him to 10 years' imprisonment as a chronic offender under § 577.023.[2] Section 577.023.6(4) provided at all relevant times that "[n]o chronic offender shall be eligible for parole or probation until he or she has served a minimum of two years imprisonment."[3] The judge then suspended execution of the 10-year sentence and ordered Plaintiff to complete Missouri's "Long Term Treatment Program for offenders with serious substance abuse addictions" under § 217.362, which states as follows:

---

[1] In ruling on a motion to dismiss, the Court may consider "public records and materials embraced by the complaint." *A.H. ex rel. Hubbard v. Midwest Bus Sales, Inc.*, 823 F.3d 448, 453 (8th Cir. 2016) (quotation marks and citations omitted). Here, the Court will draw background facts from the allegations in Plaintiff's Amended Complaint (doc. 10), the state circuit court judge's orders in the underlying criminal case, *State v. Sandknop*, No. 12SL-CR12196-01, and the parties' briefs in Plaintiff's writ proceedings before the Missouri Court of Appeals, *Sandknop v. Goldman*, No. ED101967.

[2] Statutory citations are to RSMo Supp. 2012 except where otherwise indicated.

[3] This requirement has been recodified at § 577.010.6(5), RSMo Supp. 2017.

> [T]he court may sentence a person to the program which shall consist of institutional drug or alcohol treatment for a period of at least twelve and no more than twenty-four months, as well as a term of incarceration. The department [of corrections] shall determine the nature, intensity, duration, and completion criteria of the education, treatment, and aftercare portions of any program services provided. Execution of the offender's term of incarceration shall be suspended pending completion of said program. . . .
>
> Upon successful completion of the program, the board of probation and parole shall advise the sentencing court of an offender's probationary release date thirty days prior to release. If the court determines that probation is not appropriate the court may order the execution of the offender's sentence.

Section 217.362.2, .3.

On March 26, 2014, the judge issued an "Order for Release" stating that Plaintiff would "be placed on probation for a period of 3 years beginning 7-11-15" and that Plaintiff was "to be released on/about 7-11-15"—approximately two years after the date of sentencing. Plaintiff completed the Ozark Correctional Center's ("OCC's") Long Term Treatment Program on May 1, 2014. On July 14, 2014, the judge issued an "Amended Order of Probation Pursuant to Section 559.115 RSMo" stating that Plaintiff would be placed on five years of probation and "released from the Department of Corrections to begin said probation on/about **December 20, 2014,** or as soon thereafter as may be practicable." According to the briefs filed by the Missouri Attorney General and Plaintiff's counsel in the Missouri Court of Appeals, the judge revised the release date to give Plaintiff jail time credit toward the two-year incarceration requirement for chronic offenders.[4]

Plaintiff then sought a writ of mandamus in the Missouri Court of Appeals, claiming he should have been released when he competed the Long Term Treatment Program. The court of appeals granted a writ in favor of Plaintiff and declared that, under its previous decision in *State ex rel. Salm v. Mennemeyer*, 423 S.W.3d 319 (Mo. App. E.D. 2014), the circuit court judge was required to "either release the defendant on probation or execute the defendant's sentence if the court determines that probation is not appropriate." *Sandknop v. Goldman*, 450 S.W.3d 499,

---

[4] Specifically, the Missouri Attorney General's Suggestions in Opposition to the Petition for Writ of Mandamus stated at page 2: "With jail time credit of two hundred four days, the sentence start date is December 20, 2012. . . . The circuit court's order of probation orders Sandknop's release on December 20, 2014, a date that complies with § 577.023.6(4)." Plaintiff's counsel's brief stated at page 10: "[A]s stated in Respondent's answer, Respondent backdated the release date to coincide with the date when Mr. Sandknop will have spent two years in prison." "[A] court can appropriately treat statements in briefs as binding judicial admissions of fact." *Holman v. Kemna*, 212 F.3d 413, 418 (8th Cir. 2000).

502-03 (Mo. App. E.D. 2014). The court of appeals "decline[d] to reach the question" of whether there was a conflict between § 217.362 (the statute authorizing the Long Term Treatment Program) and § 577.023 (the chronic-offender statute) because, "under the terms of the Amended Order, [the judge] did not act under either statute." *Id.* at 502 n.2. Instead, the court of appeals held that the amended order was "contrary to law" because it was improperly based on § 559.115. *Id.* at 503 & n.3. The court of appeals then ordered the circuit court, on remand, to "comply with the limited authority granted by § 217.362." *Id.* at 503.

On remand, the circuit court judge issued the following order: "Pursuant to 74.06(a) the Court amends its Order of 7-14-14 to delete the words Section 559.115 and substitutes in its place Sections 217.362 & 577.023 RSMo. The Order remains the same with these additions." The judge then ordered Plaintiff's immediate release, subject to five years of probation. Ultimately, however, Plaintiff's probation was revoked, and he is now re-incarcerated.

Plaintiff filed this action under 42 U.S.C. § 1983. (Doc. 1.) Initially, the Court permitted Plaintiff an opportunity to amend the Complaint to state his allegations with more specificity. (Doc. 9.) The Amended Complaint names the following defendants: (1) the Missouri Department of Corrections; (2) the Missouri Department of Corrections, Board of Probation and Parole; (3) Aaron Jarrett, the former probation and parole supervisor at OCC; and (4) Brian O'Connell, the warden of OCC. (Doc. 10.) Plaintiff alleges that Defendants had an "obligation to release [him] after his successful completion of long-term treatment." (*Id.* at 4.) He also claims that "sometime in late March 2014," Mr. Jarett "contacted Judge Goldman by phone and mislead [sic] him into believing that OCC had a 2 year treatment and that they had jurisdiction for 2 years." (*Id.* at 4-5.) Plaintiff argues that Defendants violated his due process right to liberty during the period of allegedly wrongful incarceration, and he seeks damages for the time he spent in prison between May 1, 2014 and December 18, 2014. (*Id.* at 3-4, 8-9.) The Amended Complaint also alleges state-law claims of intentional infliction of emotional distress and false imprisonment. (*Id.* at 4.)

The Court previously dismissed the Department of Corrections and the Board of Probation and Parole from the case, and only Jarrett and O'Connell remain as defendants. (Doc. 9.) They have moved to dismiss for failure to state a claim (doc. 16), and Plaintiff has filed suggestions in opposition (doc. 18) and a motion for appointment of counsel (doc. 24).

## Legal Standard

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil

Procedure 12(b)(6), a complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). The Court "accept[s] the allegations contained in the complaint as true and draw[s] all reasonable inferences in favor of the nonmoving party." *Cole v. Homier Dist. Co.*, 599 F.3d 856, 861 (8th Cir. 2010) (quotation marks and citation omitted). Although the Court liberally construes a *pro se* complaint, it "still must allege sufficient facts to support the claims advanced." *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). The Court will not "'supply additional facts'" or "'construct a legal theory for plaintiff that assumes facts that have not been pleaded.'" *Id.* (citation omitted).

## Discussion

The Amended Complaint fails to state a § 1983 due process claim. Defendants are immune from liability under the doctrine of quasi-judicial absolute immunity because they were following facially valid court orders, and they are shielded by qualified immunity because they did not violate Plaintiff's "clearly established" rights. Given only state-law claims remain, the Court will decline to exercise supplemental jurisdiction over the case.

### I. Quasi-Judicial Absolute Immunity

"[O]fficers are protected by quasi[-]judicial absolute immunity when they enforce a court order." *Rose v. Flairty*, 772 F.3d 552, 554 (8th Cir. 2014). Although the order must be "facially valid," this determination is distinct from whether the order was merely "unlawful." *Penn v. United States*, 335 F.3d 786, 790 (8th Cir. 2003). "[T]o subject police officers to suit for serving or executing a facially valid court order that is later held to be unlawful would require them to 'act as pseudo-appellate courts.'" *Id.* at 789 (citation omitted). An order is facially invalid only if "it was issued in the 'clear absence of all jurisdiction'"—for example, "'[i]f a probate judge . . . should try a criminal case,'" but not "'if a judge of a criminal court should convict a defendant of a nonexistent crime.'" *Id.* at 789-90 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356-57 & n.7 (1978)). The Eighth Circuit has held that quasi-judicial absolute immunity extends to "prison wardens" and "'police and other court officers for purely ministerial acts where they do nothing other than perform orders issuing from a court.'" *Id.* at 789 (citations omitted).

Here, quasi-judicial absolute immunity bars Plaintiff's claim that Defendants had an

4

"obligation to release [him] after his successful completion of long-term treatment" on May 1, 2014. (Doc. 10 at 4.) The judge's orders required a later release date—first July 11, 2015, and then December 20, 2014, to give credit for jail time served toward the two-year incarceration requirement for chronic offenders. Although the Missouri Court of Appeals later determined that the state circuit court judge's amended order was "contrary to law," it was not in "clear absence of all jurisdiction." The order specified Plaintiff's release date, and the judge who issued it was the same judge who imposed Plaintiff's sentence and ordered him to complete the Long Term Treatment Program. Defendants cannot be liable for following such an order. This claim is, therefore, barred by quasi-judicial absolute immunity. *See Rose*, 772 F.3d at 554; *Penn*, 335 F.3d at 789-90.

## II.     Qualified Immunity

Qualified immunity also bars Plaintiff's claims, including his allegation that "sometime in late March 2014," Mr. Jarett "contacted Judge Goldman by phone and mislead [sic] him into believing that OCC had a 2 year treatment and that they had jurisdiction for 2 years." (Doc. 10 at 4-5.) Government officials are entitled to qualified immunity against claims for damages unless "(1) [the] plaintiff's constitutional rights have been violated, and (2) those rights were so clearly established at the time of the violation that a reasonable officer would have known that his actions were unlawful." *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1058 (8th Cir. 2013). Qualified immunity is the proper subject of a motion to dismiss "when the immunity is established on the face of the complaint." *Id.* at 1058 (quotation marks and citations omitted). The "face of the complaint" includes public records. *A.H. ex rel. Hubbard*, 823 F.3d at 453 (quotation marks and citations omitted).

Here, Plaintiff did not have a "clearly established" right to be released prior to completing two years' imprisonment. To overcome qualified immunity, "'[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *King v. Beavers*, 148 F.3d 1031, 1034 (8th Cir. 1998) (citation omitted). Plaintiff argues that Defendants knew about and violated the Missouri Court of Appeals' decision in *Salm*, which stated that the Department of Corrections' "court report investigations should no longer advise that section 217.362 allows trial courts to retain jurisdiction up to twenty-four months." *State ex rel. Salm*, 423 S.W.3d at 321 n.4. However, the court in *Salm* did not address the two-year incarceration requirement for chronic offenders set out in § 577.023.6(4). *See id.* at 319-22. The

5

Supreme Court of Missouri has now squarely held that "the plain language of section 217.362.3 does not require the circuit court to immediately release a chronic offender prior to serving the two years of imprisonment required by section 577.023.6(4)." *State ex rel. Hodges v. Asel*, 460 S.W.3d 926, 929 (Mo. banc 2015). Accordingly, Defendants did not violate a "clearly established" right of Plaintiff by holding him until he was incarcerated for two years or by advising the circuit court judge they had authority to do so. Defendants are, therefore, entitled to qualified immunity.

III. **Subject-Matter Jurisdiction**

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Here, the Court has original subject-matter jurisdiction only over Plaintiff's § 1983 due process claim, which "aris[es] under" federal law. 28 U.S.C. § 1331. However, there is no basis for original subject-matter jurisdiction, such as diversity of citizenship, over Plaintiff's remaining state law claims of intentional infliction of emotional distress and false imprisonment. *See* 28 U.S.C. § 1332. Accordingly, the Court need not exercise supplemental jurisdiction over these claims. 28 U.S.C. § 1367(c)(3). "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Keating v. Nebraska Pub. Power Dist.*, 660 F.3d 1014, 1019 (8th Cir. 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). After careful consideration of these factors, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

**Conclusion**

For the reasons set forth above, Defendants' Motion to Dismiss (doc. 16) is **GRANTED IN PART**, Plaintiff's Motion for Appointment of Counsel (doc. 24) is **DENIED** as moot, and the case is **DISMISSED** for lack of subject-matter jurisdiction.

**NOTICE CONCERNING $505 APPEAL FILING FEE**

Plaintiff is advised that if he appeals this dismissal, in addition to the $350 filing fee, federal law now "'makes prisoners responsible for [appellate filing fee of $505] the moment the prisoner . . . files an appeal.'" *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (citation omitted). Pursuant to *Henderson*, Plaintiff is notified as follows:

> (a) the filing of a notice of appeal by the prisoner makes the prisoner liable for payment of the full . . . appellate filing fees regardless of the outcome of the appeal; (b) by filing a notice of appeal the

6

> prisoner consents to the deduction of the initial partial filing fee and the remaining installments from the prisoner's prison account by prison officials; (c) the prisoner must submit to the clerk of the district court a certified copy of the prisoner's prison account for the last six months within 30 days of filing the notice of appeal; and (d) failure to file the prison account information will result in the assessment of an initial appellate partial fee of $35 or such other amount that is reasonable, based on whatever information the court has about the prisoner's finances.

*Id.* at 484.

The Court directs the Clerk of the Court to mail a copy of this Order to Plaintiff Christopher Sandknop via regular mail.

**IT IS SO ORDERED.**

s/ Roseann A. Ketchmark  
ROSEANN A. KETCHMARK, JUDGE  
UNITED STATES DISTRICT COURT

Dated: July 16, 2018